UNITED STATES of America, Plaintiff-Appellant,

v.

Lowell G. ANDERSON, Defendant-Appellee.

UNITED STATES of America, Plaintiff-Appellant,

v.

Lowell G. ANDERSON; Carolyn A. Anderson; Arthur P. Tranakos; William Pilgrim; Donald Barenson; Ronald Max Ellsworth, a/k/a Max Ellsworth; First Colonial Trust; Donald Perry, Defendants-Appellees.

Nos. 83–2519, 83–2522 and 83–2664 to 83–2670.

United States Court of Appeals, Tenth Circuit.

Dec. 6, 1985.

James P. Springer, Atty., Tax Div., Dept. of Justice, Washington, D.C., and Richard A. Stacy, U.S. Atty., Cheyenne, Wyo. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Robert E. Lindsay, Attys., Tax Div., Dept. of Justice, Washington, D.C., with them on briefs), for plaintiff-appellant.

Joseph Saint-Veltri, Denver, Colo., for defendant-appellee, Lowell G. Anderson.

Stephen M. Munsinger, Denver, Colo., for defendant-appellee, Carolyn A. Anderson.

Michael J. Abramovitz, Drexler, Wald & Abramovitz, Denver, Colo., for defendant-appellee, Donald Barenson.

Stephen Ross Higgins, Englewood, Colo., on brief, for defendant-appellee, William Pilgrim.

Mike DeGeurin, Foreman & DeGeurin, Houston, Tex., on brief, for Arthur P. Tranakos.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

By indictment, Lowell G. Anderson was charged in eight counts with aiding and abetting various individuals in willfully failing to file income tax returns in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7203. In a second indictment, Anderson and seven other defendants were charged in eleven counts and in various combinations with conspiring to impede the lawful functions of the Internal Revenue Service, willfully failing to file income tax returns, willfully attempting to evade income taxes, willfully aiding and assisting in the filing of false income tax returns, willfully obstructing justice, all in violation of specified sections of the Internal Revenue Code. These indictments arose out of the defendants' promotion of so-called "common law trusts," whereby the defendants allegedly induced persons to enter into a series of sham transactions, having no economic substance, and solely designed to eliminate or reduce their income tax liability.

The defendants in both indictments filed motions seeking dismissal of the indictments on various grounds. The defendants' grounds for dismissal of the indictments, or certain counts therein, were improper selection of the grand jury, failure to allege a specific statutory offense, duplicitous pleading, double jeopardy, and prosecutorial misconduct during the course of the grand jury's deliberations.

The district court conducted evidentiary hearings on the motions to dismiss and rejected all the grounds urged by the defendants except the claim of prosecutorial misconduct before the grand jury. In this regard, the district court held that in four particulars the government had engaged in a "pattern of conduct calculated to infringe the grand jury's ability to exercise independent judgment." The district court's memorandum opinion and order appears as *United States v. Anderson*, 577 F.Supp. 223 (Wyo.1983). On the basis of prosecuto-

rial misconduct, the district court dismissed both indictments. The government appeals. We reverse.

The four instances of prosecutorial misconduct perceived by the district court were: (1) the grand jury's use at the instance of the prosecution of undercover agents who infiltrated the defendants' organization and reported back to the grand jury the information thus acquired; (2) the use by the prosecutor of an expert witness under contract with the government who testified before the grand jury and who, in testifying, used certain promotional matter sent by the defendants to prospective customers, which material was itself before the grand jury; (3) the use by the prosecution of I.R.S. agents who "screened" potential grand jury witnesses and determined which witnesses should appear before the grand jury, and which ones had no pertinent information to give; and (4) the grant by the prosecution of "informal immunity" to prospective grand jury witnesses. As indicated, the reasoning of the district court was that the combination of these actions by the government undermined the independence of the grand jury.

### I.

In its memorandum opinion, the district court stated that "by far the most serious act in the pattern of governmental misconduct was the use of undercover investigators to infiltrate the defense camp, and the involvement of the grand jury in that infiltration." 557 F.Supp. at 231. In this regard, it would appear that some time prior to the empanelling of the grand jury, I.R.S. undercover agents had infiltrated the "defense camp" in an effort to obtain incriminatory evidence against the defendants. These undercover agents initially contacted the defendants, or some of them, posing as potential purchasers of the tax-shelter program. One of these agents, Agent Tucker, was later subpoenaed, under his "cover name," to testify before the grand jury, and he testified as to his knowledge of the defendants and their activities. This was a "continuing" grand jury, and at the conclu-

sion of his testimony, Tucker was "urged" by the prosecutor, on behalf of the grand jury, to continue his infiltration tactics and hopefully obtain additional information which could be used to obtain a search warrant. Agent Tucker did testify before the grand jury about statements made by some of the defendants, including an attorney, about how they would hopefully "blunt" the grand jury's investigation.

■ We are not shocked, as was the district court, over the grand jury's awareness of the use of undercover agents to infiltrate the defendants' operation. The grand jury is itself an investigative body vested with broad powers. *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). Indeed, the grand jury does not fulfill its investigatory duty until every clue has been run down and every witness examined. *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972). The use of informers and undercover agents is not improper, *per se*, but is, to the contrary, a legitimate investigative tool. In the words of Judge Learned Hand in *United States v. Dennis*, 183 F.2d 201, 224 (2d Cir.1950), *aff'd*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), "Courts have countenanced the use of informers from time immemorial; in cases of conspiracy, or in other cases when the crime consists of preparing for another crime, it is usually necessary to rely upon them or upon other accomplices because the criminals will almost certainly proceed covertly...." The foregoing was cited with approval in *Hoffa v. United States*, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). We agree with the statement of appellant's counsel that the instant case involves no more than "the everyday, garden-variety consensual monitoring by an undercover agent of putative co-conspirators who assume the risk that the third party with whom they share their conversations might be a government investigator." We do not see how the grand jury's awareness of this otherwise legitimate undercover investigation infringed the grand jury's independence. *See United*

*States v. Pino,* 708 F.2d 523, 530 (10th Cir.1983).

## II.

■ A Professor Neal Harl, under contract with the government, was called to testify before the grand jury as an "expert witness" on trust law. Professor Harl initially testified concerning general concepts of trust law. Then, at the request of the grand jury, certain promotional materials promulgated to the general public by the defendants, or some of them, were shown the witness and he testified concerning them. These same materials were before the grand jury. The district court held that Harl's use of this promotional matter in his testimony before the grand jury violated the secrecy requirement of Fed.R.Crim.P. 6(e), which prohibits disclosure of "matters occurring before the grand jury." Indeed, the district court observed that such conduct "glitters as a piece in the pattern of governmental misconduct that abrogated the grand jury's independence." We do not see the glitter.

In attempting to uphold the district court's ruling on the Professor Harl issue, the appellees rely on *United States v. Tager,* 638 F.2d 167 (10th Cir.1980). The facts in *Tager* are far different from the present facts.[1] The facts of the instant case are more akin to *United States v. Lartey,* 716 F.2d 955 (2d Cir.1983), where the Second Circuit held that the government's employment of a retired I.R.S. agent to review financial records of a defendant fell within the "governmental personnel" exception to the general rule of secrecy of matters occurring before the grand jury. That court also stated that the grand jury's independence was not affected by disclosure of the financial records since "documents are not cloaked with secrecy merely because they are presented to a grand jury." *Id.* at 964.

## III.

■ The third area of prosecutorial misconduct perceived by the district court was the use of I.R.S. agents to "screen" potential grand jury witnesses and determine which ones should formally appear before the grand jury. Pursuant to I.R.S. procedures, these agents would apparently initially identify themselves with I.R.S. credentials, but then state that they were conducting interviews for the United States Attorney and the grand jury, and not for the I.R.S. This occurred outside the grand jury's proceedings and there is no indication that the grand jurors knew of this procedure. Be that as it may, such screening of potential grand jury witnesses by I.R.S. agents, in the view of the district judge, somehow impaired the grand jury's ability to act independently and he opined that this particular issue had actually been resolved at Runnymede in 1215 A.D. We are not impressed.

Fed.R.Crim.P. 6 contemplates the use of government agents, such as I.R.S. agents, to assist an attorney for the government in his handling of a grand jury investigation. Such is evidenced by the notes of the Advisory Committee on Rule 6(e), which read as follows:

Attorneys for the Government in the performance of their duties with a grand jury must possess the authority to utilize the services of other government employees. Federal crimes are "investigated" by the FBI, the IRS, or by Treasury agents and not by government prosecutors or the citizens who sit on grand juries. Federal agents gather and present information relating to criminal behavior to prosecutors who analyze and evaluate it and present it to grand juries. Often the prosecutors need the assistance of the agents in evaluating evidence. Also, if further investigation is required during or after grand jury proceedings, or even during the course of criminal trials, the Federal agents must

---

**1.** In *Tager* the disclosure involved grand jury transcripts, not preexisting promotional materials. The person to whom disclosure was made was a nontestifying investigator and was not in any sense in the employ of the government, and the prosecution, not the grand jury, made the request for disclosure. 638 F.2d at 168–69.

do it. There is no reason for a barrier of secrecy to exist between the facets of the criminal justice system upon which we all depend to enforce the criminal laws. *See also United States v. Cosby*, 601 F.2d 754, 757–58, n. 6 (5th Cir.1979), and cases cited therein; *In re Gruberg*, 453 F.Supp. 1225, 1233–34 (S.D.N.Y.1978).

## IV.

 The fourth, and last, area of prosecutorial misconduct perceived by the district court concerned the government's use of "informal immunity."[2] Apparently government agents would grant a potential witness, either by a letter or verbally, immunity from any prosecution which would be based on his testimony before the grand jury. Such, in the eyes of the district court, was a "damnable practice" which tended to breach the integrity of the grand jury system and violated the Fifth Amendment rights of the witness. We are unable to agree. The propriety of using informal immunity has been frequently upheld.[3] *United States v. Winter*, 663 F.2d 1120, 1133 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983); *United States v. Librach*, 536 F.2d 1228, 1230 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976); *see also United States v. Peister*, 631 F.2d 658, 662–63 (10th Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). Furthermore, defendants have not shown how the use of informal immunity in the present context biased the grand jury. *See United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983).

In sum, the district court erred in dismissing the indictments based on prosecutorial misconduct. Dismissal of an indictment returned after deliberation by a grand jury is a very drastic action. The record in the instant case does not support

---

**2.** "Informal immunity" is contrasted with "statutory immunity," which by statute requires the approval of a senior Justice Department official and of the district court judge. *See* 18 U.S.C. §§ 6002, 6003.

**3.** In reaching the merits of this issue, we do so only with respect to the district court's conclu-

the conclusions of the trial court which formed the basis for the dismissal. *See United States v. Morrison*, 449 U.S. 361, 365–67, 101 S.Ct. 665, 668–67, 66 L.Ed.2d 564 (1981); *United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983). Reported cases where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are few and far between. By way of illustration only, *see United States v. Drake*, 655 F.2d 1025 (10th Cir.1981).

Judgments reversed and cases remanded with direction to reinstate both indictments.

---

sion that the use of informal immunity infringed the grand jury's independence. We do not consider the right against self-incrimination rationale relied on by the district court, as appellees have no standing to assert vicariously this Fifth Amendment right of the witness. *United States v. Skolek*, 474 F.2d 582 (10th Cir.1973).