UNITED STATES of America, Plaintiff,

v.

Robert W. CHAMBERS, Defendant.

No. 86–00054–01–CR–W–6.

United States District Court,
W.D. Missouri, W.D.

March 25, 1987.

Cynthia Clark Campbell, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

James L. Eisenbrandt, Morris, Larson, King & Stamper, Overland Park, Kan., for defendant.

### MEMORANDUM AND ORDER DENYING MOTION TO WITHDRAW PLEA

SACHS, District Judge.

Defendant Robert W. Chambers, a tax preparer, seeks to withdraw his plea of guilty to conspiracy and one substantive count charging that he caused the filing of fraudulent income tax returns by taxpayers, claiming false charitable contribution deductions. The plea was taken on June

30, 1986, in a lengthy proceeding which also resulted in a nolo contendere plea by Mrs. Chambers. Subsequent to the preparation of presentence reports, but prior to sentencing, defendant indicated a wish to withdraw his pleas and expressed dissatisfaction with appointed counsel. Pro se filings thereafter occurred and the court held a conference in chambers, after which appointed counsel was given leave to withdraw and a substitute was appointed.

The litigation is of considerable complexity, in that the Government forecast a trial of five weeks and had subpoenaed 65 witnesses. After substitute counsel reviewed the matter and considered defendant's various theories, an amended motion to withdraw the plea was filed and the matter was heard. Recognizing that defendant was questioning the degree of culpability reflected in the presentence report, as well as making other assertions, the hearing was scheduled to provide a dual opportunity to present the motion and to challenge (and defend) the factual statements in the presentence report.

In the amended motion to withdraw guilty plea, filed February 11, 1987, defendant contends (1) there is insufficient factual basis for acceptance of the plea and defendant is in fact not guilty of the crimes alleged; (2) the plea was entered on the advice of appointed counsel who was primarily a civil litigator and not a criminal attorney, and counsel failed to advise defendant of "a possible defense based upon the Religion Clause of the First Amendment to the United States Constitution by virtue of his position as a minister of the Church of Christ in Zion;" and (3) there was prosecution and grand jury abuse including unauthorized use of "pocket immunity" to obtain evidence and use of a single summary witness.

The Government contends it is too late to attack the indictment, its procedures were proper, prior counsel prepared extensively for the case and was more than adequate in his representation, and the transcript of the plea proceeding establishes a factual basis for finding defendant guilty. In addition, the court will consider whether the materials presented in the presentence report and in support of certain challenged items tends to support the soundness of the acceptance of the plea.

## I.

This controversy is governed by Rule 32(d), Federal Rules of Criminal Procedure, which grants discretion to a trial court, after receiving a plea of guilty but before sentence, to allow withdrawal of the plea "upon a showing by the defendant of any fair and just reason ..." for such withdrawal. While the court is expected to exercise more leniency than when a change of heart occurs after sentencing, there are strong reasons to insist on the sanctity of a plea, absent persuasive grounds to allow a withdrawal. The rationale for exercising considerable firmness is well expressed in Judge Wright's opinion in *United States v. Barker*, 514 F.2d 208, 220–22 (D.C.Cir.) *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Judge Stephenson of the Eighth Circuit has likewise stated that a plea of guilty is a "solemn act not to be disregarded because of belated misgivings about the wisdom of the same." *See also United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir.) *cert. denied*, 404 U.S. 864, 92 S.Ct. 53, 30 L.Ed.2d 108 (1971) (where defendant claimed undue influence of counsel); *United States v. Bradin*, 535 F.2d 1039 (8th Cir.1976) (noting that the presentence report would be one method of determining that a factual basis exists for the plea); *United States v. Picone*, 773 F.2d 224 (8th Cir.1985).

A plea proceeding has at least the solemnity of a naturalization ceremony or the taking of an oath of office. While even the most serious commitments can sometimes be set aside or annulled it is my impression that trial judges generally require a very persuasive reason before granting relief from this type of solemn declaration.

It seems natural that a defendant may occasionally develop a different perspective while awaiting sentence than while awaiting trial. In this case, under the plea agreement, defendant may be sentenced to imprisonment for three years. Unless a

withdrawal is sought very promptly, so as to cast doubt on the fixed purpose of the defendant in pleading guilty, there should be substantial appealing reasons given before leave is granted to withdraw the plea.

As will be seen, there is little substance in this case to the request to withdraw the plea, although defendant has been somewhat evasive and quarrelsome about acknowledging the degree of his guilt. It should be remembered, however, that the factual basis for accepting a plea need not come entirely from the lips of the defendant. *United States v. Cody*, 438 F.2d 287, 289 (8th Cir.1971). My policy has been to accept pleas of nolo contendere with some liberality. *United States v. Hines*, 507 F.Supp. 139 (W.D.Mo.1981). In the *Hines* ruling I endorsed the view of the District of Columbia Circuit that a mere reluctance of a defendant to acknowledge his guilt or to admit the alleged facts showing guilt should not result in a rejection of a plea. *United States v. Gaskins*, 485 F.2d 1046 (D.C.Cir.1973). Where a factual basis for accepting a plea can be obtained in some manner, I view it as unduly coercive to threaten a defendant with trial if he fails to confess to the satisfaction of the trial judge.

## II.

■ The first issue to be ruled is whether there is reason to believe defendant was unduly influenced by counsel in pleading guilty. This is an almost frivolous contention, under the circumstances. Defendant is clearly a person of self-possession, if not stubbornness, and is mature, experienced and educated. He had the benefit of very capable counsel, whose conscientious handling of this matter is reflected in time records filed with the Government's response of February 27, 1987 (previously submitted to the court). In addition, he benefitted from the aid of experienced counsel appointed for Mrs. Chambers to analyze her legal problems. It is not contended that there was ineffective assistance of counsel in any technical sense. Defendant's initial attorney is primarily a litigator in civil cases, and purportedly stated he was not a criminal law or tax specialist. Defendant does not contend, however, that he was entitled to counsel with that unusual joint specialty. The only "possible defense" that he now asserts was not given consideration is a supposed First Amendment claim that is not developed by current counsel as a sound or even colorable defense.

The court is unable to determine from the record what sort of First Amendment defense may be articulated by defendant. As concluded in the *Moon* case, "to permit church leaders to stand above the law" is patently unsound. *United States v. Moon*, 718 F.2d 1210, 1228 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). Assuming defendant continues to assert religious motivation and religious use of funds obtained by him, even if the court credits the sincerity of the claim it would not begin to justify defendant's promotion of fraudulent claims of religious contributions by persons who were not religiously motivated, as defendant acknowledges he did. The so-called First Amendment issue would not probably be advanced by a competent criminal lawyer with tax expertise unless counsel disregarded the duty to avoid legally frivolous contentions.[1]

In any event, the transcript of the plea proceeding shows that defendant repeatedly expressed a desire to plead guilty and I have no reason to doubt the serious and candid statement of intent. There was no undue influence justifying withdrawal of the plea.

## III.

The major ground for setting aside the plea would be a deficiency in the factual

---

1. Even if a nonfrivolous issue of willfulness could be imagined, the likelihood of a conviction may be deemed so overwhelming as to make the plea agreement a very desirable limitation on exposure. Tr. 10. The jury would doubtless have been instructed on the law, as established by cases such as *Loving Savior Church v. United States*, 728 F.2d 1085 (8th Cir.1984). Certainly, as will be shown, the agreement cannot be said to have been improvident.

basis previously supplied. While the record is unusual, on reconsideration I conclude that a strong factual basis was made.

Defendant acknowledges that he aggressively promoted a plan for taking charitable deductions for alleged religious contributions by taxpayers irrespective of religious affiliation or motivation. He created corporations controlled by the taxpayers and from which they could freely withdraw property, knowing that many of the taxpayers would likely draw on the property for personal use. Tr. 52–4. Defendants' counsel were unable to locate taxpayer-witnesses who were not hostile. Tr. 10. This can only mean that no witnesses would testify that they were induced to accept the plan by inspirational messages from defendant; it suggests that tax avoidance was routinely and apparently invariably used as the sole rationale of the plan. Defendant himself expressed some remorse and said he sought to be "rehabilitated." Tr. 13, 45.

Government counsel made a rather lurid and conclusory statement that was generally acknowledged to be true by defendants' attorneys and by defendant himself. Taxpayer-clients would testify, according to Government counsel, that they were not generally told the defendants were creating churches (Tr. 36); some were told later to put up altars in their homes so they would look like churches (Tr. 40). Defendant's attorney confirmed the facts (excepting some language of advocacy). Tr. 43. Defendant said there were "a few variances" but confined his reservations to repeatedly and vigorously denying that he received "fees" for his work, asserting (as may be accepted for present purposes and also for sentencing) that he directed instead that contributions be made to a real, functioning church. Tr. 44, 45, 47, 52, 53.

Mrs. Chambers has pleaded nolo contendere to the charge of conspiracy, does not seek to withdraw her plea, and actively assisted her husband in carrying out the scheme. The active involvement of a brother, John Chambers, was also asserted and not denied. The conspiracy facts were adequately developed at the plea proceeding.

The substantive count alleges that defendant caused the Wharton tax returns to fraudulently claim a deduction of $46,799. Defendant acknowledges that he believed Wharton would likely keep control of the property. Tr. 55. According to Government counsel, in outlining testimony not questioned by defendant or his attorney, Wharton was told he could take money out of his corporation and was not told he was setting up a church. Tr. 48–9. While defendant did express a conclusion that Wharton had established "a real storehouse" (Tr. 48), the taxpayer apparently may now be classified as a "hostile witness" unwilling to support defendant at trial. Tr. 10.

Even if, in retrospect, some improvements could be suggested for the plea proceeding record, I am entitled under the *Bradin* decision to consider the plea in light of the presentence report. It was further acknowledged that, for sentencing purposes, I could consider affidavits of prospective witnesses. These affidavits and the presentence report should be considered in connection with the claim that there may be some "fair and just reason" for setting aside the plea. At a minimum, the materials establish a context for defendant's present conclusory and unexplained statement that he now believes he is not guilty.

R.R. Brooks used defendant as a tax preparer beginning in 1975. In 1979 defendant advised Brooks that the taxpayer needed a not-for-profit corporation for purposes of saving taxes. P.Exh. 1. R.W. Longoria was advised to create a church as a not-for-profit corporation. The taxpayer would be "reverend" of his own church. The congregation would consist of the taxpayer and his girlfriend. The taxpayer "informed Chambers that he would never use the corporation as a church or for any religious related activity." He was convinced by argument of Chambers that he had a constitutional right to "levy his own taxes." He was told the plan was permissible because "the Rockefellers, Nixons,

Fords and others" manipulated their taxes. P.Exh. 2. P.G. Jones met Chambers as a passenger on an airline. He was advised to establish a not-for-profit corporation to save taxes. He was told the assets could be controlled by the donor and the donor could also borrow from the corporation. P.Exh. 3. W.E. Jobes was urged to create a not-for-profit corporation before there was any reference to religious purposes. He had no religious intent; his only objective was tax savings. P.Exh. 4. L.T. Folds was advised he needed a tax shelter and was instructed to go to a recommended school to become a minister in order to legitimize the corporation. The taxpayer attended the school for some eight weeks. P.Exh. 5. J.G. Davison and his wife were assured by John Chambers that they would not lose control of their assets when they placed them in a religious corporation; they never intended a religious-type entity. Mrs. Davison was advised that the corporate assets could be used to pay college tuitions for their children and could finance a European trip. P.Exhs. 6 and 7. G.D. Davis was advised to deduct contributions to his corporate "church" and to use the funds after retirement. P.Exh. 8. Similar advice was given to the Whartons, who had used Chambers as a tax preparer for 16 years. P.Exh. 9.

■ It is obvious that the bizarre theories advanced by this experienced person claiming tax expertise were little if any better than the various tax-protestor theories voiced in recent years. The pleas of guilty were strongly supported by the facts, were soundly accepted and should not be set aside.

### IV.

The principal legal contribution advanced by new counsel is to offer challenges to the indictment.[2] While the contentions may be deemed untimely, they will be considered.

Attached to the amended motion to withdraw guilty plea is a copy of a letter from an Assistant United States Attorney dated January 31, 1985, purporting to promise, in exchange for his testimony, that a prospec-

tive witness would not be prosecuted. Defendant contends that the grand jury proceedings were tainted by the use of unauthorized grants of "pocket immunity." This appears to be the view of District Judge Kane in Colorado. *United States v. Kilpatrick*, 594 F.Supp. 1324, 1348–49 (D.Colo.1984). The Tenth Circuit disagrees. *United States v. Anderson*, 778 F.2d 602 (10th Cir.1985). *See also Taylor v. United States*, 798 F.2d 271, 273 (7th Cir.1986) *cert. denied,* —— U.S. ——, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987); *United States v. Gordon*, 637 F.Supp. 199 (W.D. Va.1986).

■ Judge Kane finds support for his concept in a Supreme Court decision, *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), dealing with a somewhat different issue. While it can perhaps be argued that *Doe* favors exclusive use of the statutory device for obtaining immunity, and poses some threat to the common practice of making agreements not to prosecute, the law in this Circuit was decided contrary to defendant's contention in *United States v. Librach*, 536 F.2d 1228 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). *See also United States v. Kurzer*, 534 F.2d 511, 513 (2d Cir.1976), and *United States v. Deerfield Specialty Papers, Inc.*, 501 F.Supp. 796, 800 (E.D.Pa.1980), where "pocket immunity" is recognized as a common practice and no criticism is voiced. I do not consider the *Doe* decision to be sufficiently in point to upset a common prosecutorial practice not dissimilar from one of the basic prerogatives of the prosecution—to decline to prosecute.

While the practice complained of may be subject to abuse, the statute in question can easily be construed to apply only when all else fails; that is, when a prospective witness rejects an informal agreement not to prosecute and the prosecution must then resort to the statutory method of requiring testimony from an unwilling witness.

A second ground of attack on the indictment was the Government's alleged use of

---

**2.** The court is grateful to counsel, however, for helping to organize a potentially chaotic record.

a single "summary witness" who presented hearsay obtained through his investigation. The practice complained of was approved by the United States Supreme Court, when it held in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), that an indictment was not vulnerable when obtained solely through the testimony of three investigating officers who had no firsthand knowledge of the transactions giving rise to the indictment.

For the reasons stated the amended motion to withdraw plea is hereby DENIED.