**In re GRAND JURY PROCEEDINGS**

No. 00–10357–WGY.

United States District Court,
D. Massachusetts.

Aug. 7, 2001.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The Government is presently before this Court seeking an order authorizing it to disclose grand jury proceedings to specified employees of the Massachusetts Insurance Fraud Bureau (the "Bureau") pursuant to Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) ("[A][ii]"). Although—seemingly as matter of course—several judges in this district (myself included) have in the past issued similar court orders allowing grand jury disclosures to employees of the Bureau pursuant to (A)(ii),[1] this Court now pauses to consider in detail the validity of such disclosures in light of the non-ex parte nature of this proceeding and the resultant full briefing and argument that this proceeding has occasioned.

## I.  Background

### A.  The Government's Motion

On September 15, 2000, the Government filed a Motion for Leave to Disclose Grand Jury Materials to Outside Experts Assisting Investigation. The Government's motion sought to disclose, pursuant to (A)(ii), documents and information that are expected to be obtained by grand jury subpoena to investigators and data analysts employed by the Bureau. Mot. at 1. In particular, the Government wanted the Bureau "investigators and analysts [to] provide ... expertise concerning the workings of the insurance industry and concerning the variety of schemes by which insurance fraud is perpetrated." *Id.* ¶ 3.

The Government's motion described the Bureau investigators as government per-

1. *See* Mot. Recons. (attaching signed orders that Judges Tauro, Wolf, Woodlock, Saris, Gertner, O'Toole, and I have issued).

sonnel, reasoning that "[a]s insurance fraud experts deemed necessary by the undersigned attorney for the government to assist in the federal investigation, [the Bureau] investigators are 'government personnel' within the meaning of Rule 6(e)(3)(A)(ii)." *Id.* ¶ 5. The motion also described the disclosure to Bureau investigators as limited to "the sole purpose of assisting the United States Attorney in the investigation and prosecution of federal criminal offenses." *Id.* ¶ 7.

### B. *Procedural Posture*

Upon initial consideration of the Government's September 15, 2000 motion for grand jury disclosure, this Court concluded that (A)(ii) is self-executing and hence does not require the Government to seek judicial approval to disclose grand jury proceedings to government personnel. Mem. of Nov. 1, 2000, 2000 WL 1678078, at *1. Agreeing that (A)(ii) is self-executing, the Government nonetheless sought a court order authorizing disclosure under (A)(ii) "as a matter of prudence, given the importance of the non-disclosure obligations of Rule 6(e)." Mot. ¶ 5 n.1. This Court disagreed with the Government's tack. This Court perceived the Government's attempt to secure a court order pursuant to (A)(ii) not as a valid effort to comply with that rule, but rather as an effort to acquire "a little 'cover' as [the Government] pursues its investigatory responsibilities in conjunction with Bureau employees." Mem. of Nov. 1, 2000, 2000 WL 1678078, at *2. Seeing no concrete Governmental need for a court order, the Court concluded that there was no case or controversy ripe for adjudication before it. *Id.*

On December 4, 2000, the Government filed a Motion for Reconsideration accompanied by a Motion to Unseal the Motion for Reconsideration. In response, this Court unsealed the Motion for Reconsideration and determined that it would be appropriate to proceed on an adversary, rather than ex parte, basis. The Court accordingly notified the local Federal Defender Office and the Massachusetts Association of Criminal Defense Lawyers and invited them to file briefs as amici curiae. On March 29, 2001, this Court held a hearing at which both the Government and the amici were present. In light of the Government's Motion for Reconsideration, this Court now addresses the merits of the Government's original motion for grand jury disclosure.

### C. *The Massachusetts Insurance Fraud Bureau*

The Massachusetts Legislature authorized two voluntary associations of Massachusetts insurance carriers, the Automobile Insurance Bureau of Massachusetts and the Workers' Compensation Rating and Inspection Bureau of Massachusetts, to create the Massachusetts Insurance Fraud Bureau. *See generally* Mass. Gen. Laws ch. 266, § 111B historical & statutory notes; *Commonwealth v. Ellis,* 429 Mass. 362, 364–66, 708 N.E.2d 644 (1999). The Bureau investigates charges of fraudulent insurance transactions and refers any violations of law regarding insurance fraud to the appropriate prosecutor. Act of Dec. 5, 1996, ch. 427, § 13, 1996 Mass. Acts 1528, 1532–35.

As an investigatory entity, the Bureau has special access to various confidential records when used pursuant to a Bureau investigation and only for Bureau purposes. § 13(d), 1996 Mass. Acts at 1533.[2]

---

**2.** The Bureau has access to:

records kept by the registry of motor vehicles; records kept by the department of

The Bureau is also authorized to request testimony and the production of documents; failure to provide the Bureau with such requested information can result in the involvement of the Massachusetts Attorney General. § 13(g), 1996 Mass. Acts at 1534.

Fifteen board members govern the Bureau: five public officials and five officials from each of the two private insurance associations. § 13(a), 1996 Mass. Acts at 1532.[3] The two private insurance associations exclusively fund the Bureau. § 13(c), 1996 Mass. Acts at 1533. In addition, the insurance associations are required to pay into a general fund for the costs of the Office of the Massachusetts Attorney General related to the prosecution and investigation of insurance fraud. Act of June 21, 1995, ch. 38, § 210, 1995 Mass. Acts 110, 519–20. *See generally* Mass. Gen. Laws ch. 26, § 8E historical & statutory notes; *Ellis*, 429 Mass. at 366, 708 N.E.2d 644. The Attorney General must use the assessments "for the purpose of the investigation and prosecution of automobile insurance fraud matters and workers' compensation insurance fraud matters referred" to him by the Bureau. § 210, 1995 Mass. Acts at 520.

Because of its structure, it is not clear whether the Bureau is a public or private entity. In *Commonwealth v. Ellis*, 429 Mass. 362, 708 N.E.2d 644 (1999), the Massachusetts Supreme Judicial Court considered whether the Bureau's involvement in

assisting the Attorney General's office in the prosecution of insurance fraud cases violated a criminal defendant's due process rights by undermining the disinterestedness of the prosecutor, *id.* at 363–64, 708 N.E.2d 644. The Supreme Judicial Court concluded that it did not. *Id.* at 370, 708 N.E.2d 644. Although the Supreme Judicial Court did not specifically address the issue, it seemed to assume without deciding that the Bureau is a private entity. *See United States v. Pimental*, 199 F.R.D. 28, 33 (D.Mass.2001) (Gertner, J.) ("It is quite obvious that the Supreme Judicial Court never doubted [the Bureau's] status as a private, non-governmental agency in *Ellis*. A close reading of *Ellis* discloses that the court presumed the private nature of the [Bureau] throughout its opinion.").

The state and federal case law is not uniform with respect to the status of the Bureau. *Compare In re Justices of the Superior Court*, 218 F.3d 11, 13 (1st Cir. 2000) ("quasi-governmental entity"), *with Pimental*, 199 F.R.D. at 34 ("private agency"), *and In re Ellis*, 425 Mass. 332, 340, 680 N.E.2d 1154 (1997) ("private investigative agency"), *and Commonwealth v. Ellis*, No. 97-1922, 1998 WL 470551, at *2 (Mass.Super.Jul.31, 1998) (Bohn, J.) (same), *aff'd*, 429 Mass. 362, 708 N.E.2d 644 (1999). *See also Commonwealth v. Sbordone*, 424 Mass. 802, 806–09, 678 N.E.2d 1184 (1997) (treating Bureau investigator as civilian in considering validity of

industrial accidents; records kept by the department of revenue; records kept by the department of transitional assistance; records kept by the Workers' Compensation Rating and Inspection Bureau; records kept by the department of employment and training; records kept by insurance companies; and criminal offender record information ...; provided, however, that access to such information and records shall be solely for the use by such authorized personnel in the performance of their official duties

and responsibilities within said insurance fraud bureau.
§ 13(d), 1996 Mass. Acts at 1533.

**3.** The five public officials include the secretary of the executive office of public safety, the director of labor and workforce development, the registrar of motor vehicles, the commissioner of insurance, and the commissioner of the department of industrial accidents. § 13(a), 1996 Mass. Acts at 1532.

his presence during execution of search warrant).

In short, the Bureau has a dual public and private nature that normally would complicate a case such as this one. The Government, however, does not here argue that the Bureau is public rather than private, because it does not think this question is relevant. Thus, for purposes of this motion, the Court will assume that the Bureau is a private entity and that its employees are similarly private individuals.

## II. Analysis

### A. *Rule 6(e): Disclosure of Grand Jury Proceedings*

The very functioning of the grand jury system depends on the secrecy of grand jury proceedings. *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). The specific reasons for grand jury secrecy are well established:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 219 n. 10, 99 S.Ct. 1667 (alteration in original) (quoting *United States v. Procter*

*& Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 [1958] ).

Rule 6(e) sets forth the general rule of secrecy for grand juries, Fed.R.Crim.P. 6(e)(2), as well as the instances in which exceptions to the rule of secrecy are permitted, Fed.R.Crim.P. 6(e)(3). The current rule provides six exceptions to the general rule of grand jury secrecy, allowing disclosures (1) to an attorney for the Government, Fed.R.Crim.P. 6(e)(3)(A)(i); (2) to government personnel, Fed. R.Crim.P. 6(e)(3)(A)(ii); (3) when directed by a court in connection with a court proceeding, Fed.R.Crim.P. 6(e)(3)(C)(i); (4) at the request of the defendant when permitted by a court, Fed.R.Crim.P. 6(e)(3)(C)(ii); (5) to another grand jury, Fed.R.Crim.P. 6(e)(3)(C)(iii); and (6) to a state official to enforce state law when permitted by the court, Fed.R.Crim.P. 6(e)(3)(C)(iv). The second exception is presently before the Court: disclosure to government personnel under (A)(ii).

### B. *Ripeness*

Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) provides:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to . . . such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

*Id.* The rule is self-executing by its own terms. *Compare* Fed.R.Crim.P. 6(e)(3)(A)(ii), *with* Fed.R.Crim.P. 6(e)(3)(C)(i), (ii), (iv) (requiring court permission before allowing grand jury disclosure). Thus, (A)(ii) does not *require* this

Court to issue an order authorizing disclosure pursuant to its terms.

Nonetheless, Rule 6(e)(3)(B) and its legislative history reveal that Congress intended the courts to play a supervisory role over disclosures made pursuant to (A)(ii). Rule 6(e)(3)(B) requires the Government to "provide the district court, before which was impaneled the grand jury whose material has been so disclosed [pursuant to (A)(ii)], with the names of the persons to whom such disclosure has been made, and [to] certify that the attorney has advised such persons of their obligation of secrecy under this rule." Fed. R.Crim.P. 6(e)(3)(B). Indeed, the Senate Report accompanying the 1977 adoption of Rule 6(e)(3)(B) indicates that "[a]lthough not expressly required by the rule, the Committee [on the Judiciary] contemplates that the names of such personnel will generally be furnished to the court *before* disclosure is made to them." Fed. R.Crim.P. 6(e) advisory committee's note (1977 enactment) (emphasis added) (quoting S.Rep. No. 95–354, at 8 [1977], *reprinted in* 1977 U.S.C.C.A.N. 527, 531).

The Government infers from this legislative history that the Court *must* issue orders authorizing grand jury disclosures pursuant to (A)(ii) when the Government appropriately requests them.[4] The legislative history and the text of the rule do not support the Government's inference. At most, they suggest that the Court should act to prevent disclosures that are *improper* under (A)(ii). The Government asks this Court, however, to cross the line between using its authority to prevent improper disclosures and using its authority to authorize disclosures via court order. In the former task, the Court properly is protecting the grand jury process; in the latter, the Court is providing the Government "cover" in case the disclosure is later questioned.[5] Neither the legislative history nor the rule itself *requires* the courts to issue orders, the sole purpose of which is to provide such cover. Indeed, "the Senate's [1977] redraft was intended to avoid imposing a supervisory role on the district court with regard to criminal use of grand jury materials by prosecutors or their assistants." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 440 n. 31, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (citing, inter alia, S.Rep. No. 95–354, at 8, *reprinted in* 1977 U.S.C.C.A.N. at 531 ["Federal prosecutors should be able, without the time-consuming requirement of prior judicial interposition, to make such disclosures of

---

**4.** To further support its conclusion that the Court is *required* either to grant or to deny the Government's request for a court order pursuant to (A)(ii), the Government relies on language in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), which states that "[t]he policies of Rule 6 *require* that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic," *id.* at 435, 103 S.Ct. 3133 (emphasis added). This statement is not applicable to the present case. *Sells Engineering* is here referring to disclosures made under Rule 6(e)(3)(C)(i) and not (A)(ii). Unlike (A)(ii), Rule 6(e)(3)(C)(i) explicitly requires the Government to obtain a court order before making disclosures pursuant to that provision. Indeed, *Sells Engineering* indicated that the key distinction between these

two provisions is that disclosure for criminal use under (A)(ii) is automatic whereas disclosure for civil use under Rule 6(e)(3)(C)(i) requires a court order. *Id.* at 440, 103 S.Ct. 3133.

**5.** In fact, the Government argued in *Pimental* that it should not be held accountable for any grand jury disclosures that were later determined to be improper under (A)(ii) because another judge had (summarily) granted the Government a court order authorizing the disputed disclosure. *Pimental*, 199 F.R.D. at 32. In *Pimental*, Judge Gertner concluded that the Government's grand jury disclosures to Bureau investigators were improper despite the other judge's order authorizing such disclosure. *Id.* at 37.

grand jury information to other government personnel as they deem necessary"] ).

■ To say that the Court *need* not intervene is not to say that it *may* not intervene for want of jurisdiction, however. The Court has the authority to allow or to deny such disclosures because courts have supervisory jurisdiction over the process of the grand jury. *See generally* 1 Charles Alan Wright, *Federal Practice and Procedure* § 101, at 296 & n.18 (3d ed.1999). To say that the Court *may* intervene, however, is not to say that it *ought* intervene here. In fact, prudential concerns led this Court originally to deny the Government's motion on the ground that it was not ripe. The basic rationale of the doctrine of ripeness is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 732–33, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 [1967] ). Yet ripeness is not an entirely prudential doctrine in light of the mandate, set forth in Article III of the Constitution, that federal jurisdiction extends only to actual cases and controversies. U.S. Const. art. III, § 2; *see also Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 535 (1st Cir.1995).

■ In determining ripeness, the Court applies the familiar two-part test announced in *Abbott Laboratories. See Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 121 S.Ct. 903, 915, 149 L.Ed.2d 1 (2001); *Stern v. U.S. Dist. Court,* 214 F.3d 4, 10 (1st Cir.2000). First, the Court must decide whether the parties have presented an issue fit for judicial review, which turns on determinations regarding "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Ernst & Young,* 45 F.3d at 535. Second, the Court must determine the degree of hardship that will result to the parties from withholding judgment, which "turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." *W.R. Grace & Co. v. U.S. Envtl. Prot. Agency,* 959 F.2d 360, 364 (1st Cir.1992) (quoting *Abbott Labs.,* 387 U.S. at 152, 87 S.Ct. 1507).

■ The first prong of this test is satisfied. The Government's motion does not rely on the existence of any contingent facts, and the contours of both the factual and legal issues are sharply defined. The second prong presents a more difficult question. In its initial consideration of the Government's motion, this Court concluded that the Government's motion was not ripe for adjudication because the Government was not required by (A)(ii) to seek a court order authorizing its disclosure. Mem. of Nov. 1, 2000, 2000 WL 1678078, at *2–*3. The Court initially reasoned that because (A)(ii) is self-executing, the Government would not suffer any hardship by the Court's refusal to issue such an order. Upon reconsideration, the Court concludes, however, that the Government has shown that it would suffer sufficient hardship to warrant consideration of the merits.

The Court's refusal to grant or to deny a court order pursuant to (A)(ii) places the Government in a dangerous dilemma:

Does government counsel forego the use of expert assistance that may be essential to a thorough and reliable consideration of the evidence in the Grand Jury's investigation and the prosecutor's charging decisions? Or does counsel risk contempt of court by choosing the "wrong" side of the divided caselaw regarding whether documents obtained by Grand

Jury subpoena constitute [Rule] 6(e) material?

Mot. Recons. at 2 (footnote omitted); *see also* Fed.R.Crim.P. 6(e)(2) ("A *knowing* violation of Rule 6 may be punished as a contempt of court." [emphasis added] ).

Moreover, in light of Judge Gertner's recent ruling that disclosure of grand jury proceedings to Bureau investigators is improper under (A)(ii), *Pimental,* 199 F.R.D. at 31;[6] *contra United States v. Rosenthal,* No. 94–CR–10244–RGS (D.Mass. Jan. 27, 1995) (Stearns, J.) (unpublished order) (denying without opinion motion to dismiss indictment for improper disclosure of grand jury materials to Bureau investigators), the possibility that the Government lawyers will be held in contempt for making a disclosure to Bureau investigators is now quite real because such disclosure would arguably constitute a knowing violation of Rule 6(e). Not wanting to risk being held in contempt, Government lawyers will be deterred from making grand jury disclosures to Bureau investigators which could jeopardize ongoing criminal investigations.

Such dilemmas are exactly the sort of hardships that make the Government's motion ripe. *Stern,* 214 F.3d at 11. Whereas upon initial consideration, the hardship the Government faced appeared minimal, the Government has set forth significant hardship, particularly in light of Judge Gertner's recent decision. Moreover, the adversarial nature of this proceeding presents an ideal opportunity for this Court to confront the merits outside the ex parte context. Accordingly, upon reconsideration, the Court concludes that

the Government has shown that it would suffer sufficient hardship to make its motion ripe for adjudication.

### C. Disclosure Under Rule 6(e)(3)(A)(ii)

#### 1. Dueling Interpretations of "Government Personnel"

By its terms, the exception to the secrecy of grand jury proceedings contained in (A)(ii) applies only to "government personnel (including personnel of a state or subdivision of a state)." Fed.R.Crim.P. 6(e)(3)(A)(ii). The crux of the present dispute centers around the meaning of "government personnel."

The amici argue that "government personnel" does not include private individuals or entities; according to the amici, therefore, the crucial question before this Court is whether the Bureau is a public or private entity. Amici's Mem. at 3–5.

The Government argues, however, that whether the Bureau is a public or private entity is irrelevant. Rather, the Government contends that the crucial question is whether particular Bureau employees may furnish expert assistance to federal prosecutors and law enforcement agents *provided that* they are bound by the strict limitations of Rule 6(e). Mot. Recons. at 7. Under the Government's interpretation of (A)(ii), disclosure to Bureau investigators would be appropriate "so long as they work under the supervision of federal prosecutors and so long as information gleaned from Grand Jury materials may be used solely to assist in the investigation and prosecution of federal crimes." *Id.*

---

**6.** Judge Gertner stayed the effect of her opinion to allow briefing on "[w]hether the Court must find the government 'knowingly' violated Rule 6(e), or in the alternative, disclosed grand jury material in 'bad faith,' before [the Court] may explore the question of the appropriate remedy through further discovery."

*United States v. Pimental,* 201 F.R.D. 24, 25 (D.Mass. 2001) (Gertner, J.). On June 4, 2001, Judge Gertner vacated the stay. Relevant here, Judge Gertner never altered her conclusion that disclosure to agents of the Bureau is improper under (A)(ii). *Id.* at 25.

(citing *Sells Eng'g,* 463 U.S. at 436, 103 S.Ct. 3133). Under the Government's interpretation, the court order the Government presently seeks would ensure that the expert uses the information for the limited purpose of furthering the criminal investigation of federal crimes. In essence, the court order makes the expert part of the "government team," which, from the Government's view, means that the expert qualifies as "government personnel" for the purposes of (A)(ii). Thus, the Government's interpretation of (A)(ii) focuses on the *use* of the information rather than the *entity* to whom the information is disclosed.

### 2. United States *v.* Sells Engineering, Inc.

The Government's main support for its interpretation of "government personnel" is language in *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), which states that (A)(ii) was amended in 1977 in order to accommodate the Justice Department's need for "active assistance from outside personnel—not only investigators from the FBI, IRS, and other law enforcement agencies, but also accountants, handwriting experts, and other persons with special skills," *id.* at 436, 103 S.Ct. 3133. The Government understands use of the term "outside experts" to mean that "government personnel" includes individuals not under the employ of the government. The Government then infers from the language of *Sells Engineering* that the propriety of disclosure under (A)(ii) turns not on whether the expert's employer is private or public, but rather on the "strict requirement that [the expert] use any disclosed information *only* to assist in the investigation and prosecution of federal crimes." Mot. Recons. at 7; *see also United States v. Kilpatrick,* 821 F.2d 1456, 1471 (10th Cir.1987) ("The Rule 6[e] proscription is on the use of the grand jury material and not on who obtains it." [citing *Sells Eng'g,* 463 U.S. at 428, 103 S.Ct. 3133] ), *aff'd on other grounds sub nom. Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

Although the Government relies heavily on *Sells Engineering* to support its interpretation, *Sells Engineering* does not stand for the proposition that (A)(ii) permits disclosure to private personnel as long as they use the information only to assist the Government in its criminal investigation. First, *Sells Engineering* never explicitly set forth the Government's interpretation. Indeed, the Supreme Court did not even have before it the question of the scope of (A)(ii) in *Sells Engineering.* Rather, *Sells Engineering* addressed under what conditions the Civil Division of the Justice Department and its staff could obtain grand jury materials for purposes of pursuing a *civil* suit. *Sells Eng'g,* 463 U.S. at 420, 103 S.Ct. 3133. Thus, the main issue before the Supreme Court was whether Rule 6(e)(3)(A)(i),[7] which allows automatic disclosure to government attorneys, permitted disclosure when the government lawyer wanted the information to pursue a *civil* action rather than a criminal action, or whether the Government had to seek a court order pursuant to Rule 6(e)(3)(C)(i).[8] *Id.* at 427, 103 S.Ct. 3133. Thus, at most, the Supreme Court's reference to (A)(ii) was dictum.

---

**7.** Rule 6(e)(3)(A)(i) provides that "[d]isclosure otherwise prohibited by this rule of matters before the grand jury ... may be made to ... an attorney for the government for use in the performance of such attorney's duty." Fed. R.Crim.P. 6(e)(3)(A)(i).

**8.** Rule 6(e)(3)(C)(i) provides that "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when so directed by a court preliminarily to or in connection with a judicial proceeding." Fed.R.Crim.P. 6(e)(3)(C)(i).

Second, even when examining the language in *Sells Engineering* upon which the Government relies, it does not support the Government's interpretation. When placed in context, it becomes apparent that the Supreme Court understood "government personnel" to include only public entities and individuals. In addressing the congressional history behind the passage of the current (A)(ii) in 1977, the Supreme Court wrote:

> Congressional criticism of the proposed amendment focused on two problems: disclosure of grand jury materials to *agencies outside the Department of Justice*, and use of grand jury materials for non-grand-jury purposes. The two were closely related, however; the primary objection to granting access to *employees of outside agencies, such as the IRS*, was a concern that they would use the information to pursue civil investigations or unrelated criminal matters, in derogation of the limitations on their usual avenues of investigation.

*Id.* at 438, 103 S.Ct. 3133 (emphasis added). This passage is significant in two respects.

First, it suggests that the Supreme Court determined that Congress, in amending Rule 6 to allow disclosure to "government personnel," envisioned disclosure to only government employees. The Government makes a giant and unsupported leap in suggesting that, while Congress expressed concern about making disclosures to government employees, it nonetheless envisioned disclosure to *any* private individual. Moreover, this passage reveals that the Supreme Court understood the term "outside personnel" as referring to agencies outside the Department of Justice, not private individuals.[9]

Second, the passage neatly expresses the Supreme Court's understanding that Congress had bifurcated concerns regarding the scope of the *use* of grand jury materials and the *entity* to whom the materials were disclosed. The Government urges this Court to conflate these issues; the Government views the issues of the *entity* to whom grand jury materials should be disclosed and the scope of the *use* of those materials as a single issue. Congress did not see the two concerns as one, however. Rather, this passage reveals that Congress, in adopting (A)(ii), was concerned not only with the scope of the *use* of grand jury materials, but also with the *entity* to whom those material are disclosed.[10]

### 3. Policy Considerations of Competing Interpretations

Despite the fact that *Sells Engineering* does not support the Government's posi-

---

**9.** *See also Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary*, 95th Cong. 29–30, 35 (1977) [hereinafter *Hearings* ] (testimony of Judge Edward R. Becker, U.S. Dist. Court, E.D. Pa.) (using "outside" in the context of outside the "U.S. attorney's office" or outside the "Justice Department"); *id.* at 51 (prepared statement of Judge Becker) ("My reference to 'agencies outside the Justice Department' is a function of the fact: [1] that the U.S. Attorney is an officer of and subject to the control of the Court; and [2] that the U.S. Attorney has more control over agencies within the Justice Department [of which the U.S.

Attorney General is the common head] than agencies outside.").

**10.** Similarly, the Government's reliance on *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), is misplaced. There, the Supreme Court considered Rule 6(e)(3)(C)(i) disclosures—not (A)(ii) disclosures—when it stated that "[t]he focus is on the *actual use* to be made of the material. If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under (C)(i) is not permitted." *Id.* at 480, 103 S.Ct. 3164.

tion, the Court must admit that as matter of policy and logic, the Government's position is compelling. The Government's interpretation defines "government personnel" in a manner that is meant seriously to address the issue of improper grand jury disclosure. Although the amici would have this Court require that there be an employee-employer relationship to warrant disclosure under (A)(ii), the Government asks this Court to read "government personnel" more expansively as only requiring control over the use of the materials disclosed.

Under the Government's interpretation, this "control" is accomplished by the very court order that the Government now seeks, which by its terms would limit the use of the materials to the "purpose of obtaining [the investigators'] assistance in the grand jury's investigation and in any subsequent federal prosecution of th[e] matter." Proposed Order at 2. On its face, the Government's interpretation is reasonable because it allows, through the control of the court order, in effect, the same control over the use of grand jury proceedings as the amici's interpretation. Indeed, there is a strong argument that the control accomplished by the court order is greater than the control inherent in a typical employee-employer relationship.

Despite the reasonableness and workability of the Government's interpretation, however, this Court is bound by the text and legislative history of (A)(ii), particularly in light of the role of grand jury secrecy in our criminal justice system:

Grand jury secrecy . . . is "as important for the protection of the innocent as for the pursuit of the guilty." [*United States v.*] *Johnson,* 319 U.S. [503,] 513, 63 S.Ct. 1233, 87 L.Ed. 1546 [1943]. Both Congress and this Court have consistently stood ready to defend it against unwarranted intrusion. In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized.

*Sells Eng'g,* 463 U.S. at 424–25, 103 S.Ct. 3133 (citation omitted). The reasonableness of the Government's interpretation is, therefore, not enough. This Court must turn to the text and history of (A)(ii) to determine whether it supports the Government's interpretation of (A)(ii).

### 4. *The Text and Legislative History*

■ The Government makes little reference to the text and history of (A)(ii), suggesting that legislative history provides courts with little guidance as to the meaning of a rule or statute. Yet this Court is bound to examine them. Indeed, when both the text and history of a rule point to the same meaning, the Court cannot ignore them. Here, both the text and legislative history of (A)(ii) support interpreting "government personnel" as restricting the entity to whom disclosures should be made and accordingly limiting grand jury disclosures to people in the employ of the government.

#### a. *The Text*

The text of (A)(ii) provides that disclosure may be made to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed.R.Crim.P. 6(e)(3)(A)(ii).

The amici point to the plain language of (A)(ii) to support their interpretation. Indeed, on its face, "government personnel" appears to refer to people in the employ of the government. Moreover, the Government's interpretation improperly reads "government personnel" out of (A)(ii) en-

tirely. The amici read (A)(ii) as setting forth two limitations: (1) a limitation on the *entity* to whom disclosure can be made and (2) a limitation on the *use* of the disclosed information. Both limitations are set forth in the text of (A)(ii): disclosures may be made only to "[1] government personnel ... [2] as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed.R.Crim.P. 6(e)(3)(A)(ii). The term "government personnel" serves to place an independent limitation on the disclosure of grand jury proceedings.

■ The Government's interpretation, however, conflates the two limitations. The Government would have this Court reduce the limitation on the *entity* to whom grand jury disclosures are to be made to a limitation on the *use* of those disclosures. By reading "government personnel" as setting forth only a limitation on the *use* of grand jury materials, however, the Government renders the term meaningless. *See United States v. Pimental*, 201 F.R.D. 24, 25 (D.Mass. 2001) (Gertner, J.). Such an interpretation violates the longstanding canon of statutory construction that all words and provisions of statutes are intended to have meaning and are to be given effect, and that no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous. *Duncan v. Walker*, —— U.S. ——, ——, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001); *United States v. Caraballo*, 200 F.3d 20, 25 (1st Cir.1999); *Mullin v. Raytheon Co.*, 164 F.3d 696, 702 (1st Cir.), *cert. denied*, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999).

Accordingly, this Court interprets "government personnel" as adding meaning to (A)(ii). The amici's interpretation of "government personnel" as referring to public as opposed to private individuals and entities is the only interpretation before the Court that meets this standard.

The text of (A)(ii) does not support the Government's interpretation. Nevertheless, because of the reasonableness of that interpretation, the Court turns to the legislative history of (A)(ii) to determine whether the Government's interpretation finds support outside the text.

b. *The Legislative History*

(1) History of the 1977 Amendments [11]

Rule 6(e) has always been designed to protect grand jury secrecy. When Congress first adopted the rule in 1946, the rule provided, in relevant part:

(e) Secrecy of Proceedings and Disclosure.

Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand juror only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.

---

11. For a thorough discussion of the history of the 1977 amendments to Rule 6(e), see *United States v. Tager*, 506 F.Supp. 707, 713–17 (D.Kan.1979), *rev'd*, 638 F.2d 167 (10th Cir. 1980).

Fed.R.Crim.P. 6(e), 18 U.S.C. § 687 app. at 1963 (1946). By its terms, the original Rule 6(e) set forth three exceptions to grand jury secrecy. Disclosures could be made (1) to "attorneys for the government for use in the performance of their duties"; (2) "when so directed by the court preliminarily to or in connection with a judicial proceeding"; and (3) "when permitted by the court at the request of the defendant." *Id.*

As a means of preserving grand jury secrecy, Rule 6(e) was designed to ensure that disclosures were made only upon court order or to government attorneys who were authorized to be present at the grand jury proceedings themselves. Fed. R.Crim.P. 6(e) advisory committee's note (1944 adoption) ("Government attorneys are entitled to disclosure of grand jury proceedings ... inasmuch as they may be present in the grand jury room during the presentation of evidence."); *Hearings, supra* note 9, at 163 (prepared statement of Bernard J. Nussbaum, attorney, Chicago); *see also* Fed.R.Crim.P. 6(d) (setting forth who may be present at grand jury proceedings).

Thus, the only authorized grand jury disclosures that did not require a court order were to "attorneys for the government for use in the performance of their duties." The scope of "attorneys for the government" was defined narrowly by Federal Rule of Criminal Procedure 54(c), which provided that "attorneys for the government" included the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, and an authorized assistant of a United States Attorney. Fed.R.Crim.P. 54(c), 18 U.S.C. § 687 app. at 1987 (1946).

The restrictive definition of "attorneys for the government" caused problems in application of the rule, however. Government attorneys were in need of assistance from experts or investigators from other government agencies or departments to assist in grand jury investigations. Fed. R.Crim.P. 6(e) advisory committee's note (1977 amendments) (reprinting *Communication from the Chief Justice of the United States Transmitting Amendments to the Federal Rules of Criminal Procedure,* H.R. Doc. No. 94–464, at 8–10 [1976] [hereinafter *Communication from the Chief Justice* ] ).

Thus, the Advisory Committee on Criminal Rules prepared amendments to Rule 6(e) in 1972, and the Committee on Rules of Practice and Procedure of the Judicial Conference approved them for distribution to the bench and bar in early 1973. *Hearings, supra* note 9, at 105 (prepared statement of Prof. Wayne LaFave, Reporter, Advisory Comm. on Criminal Rules). After revision, the Judicial Conference approved the proposed amendments for transmittal to the Supreme Court in late 1975, and the Supreme Court submitted them to Congress on April 26, 1976. *Id.; see also Communication from the Chief Justice, supra,* at iii. The proposed amendment provided, in relevant part:

(e) SECRECY OF PROCEEDINGS AND DISCLOSURE. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. *For purposes of this subdivision, "attorneys for the government" includes those enumerated in rule 54(c); it also includes such other government personnel as are necessary to assist the attorneys for the government in the performance of their duties.* Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury

only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.

*Id.* at 7. The proposed amendment was designed to codify the existing trend in the case law to "allow[ ] disclosure to government personnel who assist attorneys for the government in situations where their expertise is required." *Id.* at 9.

The House Subcommittee on Criminal Justice conducted hearings on the Supreme Court's proposed amendment to Rule 6(e).[12] After the hearings, the House Subcommittee recommended to the House in H.R. 5864 that it reject the Supreme Court's proposed amendment because "the proposed substantive change raise[d] basic questions about what the function and role of a grand jury should be, and because . . . efforts to modify the proposed language . . . were frustrated by the overall unclarity surrounding [the] current rule 6(e)." 123 Cong. Rec. H11,109 (daily ed. Apr. 19, 1977) (statement of Rep. Mann); *see also* H.R.Rep. No. 95–195, at 5 (1977) ("Present Rule 6(e) does not clearly spell out when, under what circumstances, and to whom grand jury information can be disclosed. It ought to be rewritten entirely."). In essence, the subcommittee agreed that disclosure to outside government agencies was needed, but that strict safeguards needed to be written into any rule that allowed such disclosure. 123

Cong. Rec. H11,111 (daily ed. Apr. 19, 1977) (statement of Rep. Holtzman).

The Senate Subcommittee on Criminal Laws and Procedures, working with the House Subcommittee on Criminal Justice, produced a revised amendment for Rule 6(e). 123 Cong. Rec. H25,194 (daily ed. July 27, 1977) (statement of Rep. Mann). The Senate's amendment was enacted into law. Act of July 30, 1977, Pub.L. No. 95–78, 91 Stat. 319. The language proposed by the Senate and adopted by Congress represents, in large part, the current Rule 6(e). It states, in relevant part:

(2) EXCEPTIONS.—

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.

*Id.; accord* 123 Cong. Rec. H25,193 (daily ed. July 27, 1977).

(2) The 1977 Amendment

The version of Rule 6(e) adopted by Congress in 1977, like the current version, allows disclosure of grand jury information to "government personnel" in certain circumstances. The phrase "government personnel," however, is not explicitly defined. When the Supreme Court transmitted its proposed amendment to Congress

---

**12.** Although the proposed amendments would have taken effect on August 1, 1976, Congress postponed their effective date for one year, Act of July 8, 1976, Pub.L. No. 94–349, 90 Stat. 822, to ensure that Congress had sufficient time to discuss and study their ramifications. *See* H.R.Rep. No. 95–195, at 2 (1977); *Hearings, supra* note 9, at 1 (remarks of Rep. Mann).

in 1976, the phrase "other government personnel" was explicitly defined in the notes to the amendment: "The Phrase 'other government personnel' includes, but is not limited to, employees of administrative agencies and government departments." *Communication from the Chief Justice, supra,* at 8. Because Congress rejected the Supreme Court's proposed amendment, including the defined phrase "other government personnel," but employed a similar phrase, "government personnel," without defining it, this Court must examine what Congress intended the phrase "government personnel" to mean and, in particular, whether it understood "government personnel" to include private individuals. The legislative history of the 1977 amendments to Rule 6(e) supports the conclusion that neither Congress nor anyone else ever understood the phrase "government personnel" or "other government personnel" to encompass private individuals.

First, at the hearings on the proposed amendment, the testimony of Professor Wayne LaFave, reporter to the Advisory Committee on Criminal Rules, explicitly addressed whether the proposed amendment authorized disclosure to individuals not in the employ of the government. Professor LaFave's testimony stated that (A)(ii) only authorized disclosure to government *employees:*

> *Mr. Mann.* . . . [T]he rule seems to restrict to other Government personnel the experts—and I will use that term loosely—that the attorney for the Government may call upon.
>
> We have a pretty big Government with a lot of experts, but on certain

matters there may not be a governmental employee who is expert in that field.

> Is it your intention not to permit the prosecutor to call in an astrologer or astronomer, for example?
>
> *Professor LaFave.* Yes; that is correct.
>
> Apparently representatives of the Justice Department whom we talked to about this particular problem did not seem to think that was a problem, in other words, that there was an occasion when they would need an expert and couldn't find the astrologer some place in the Federal Government.
>
> Apparently that is not the problem.

*Hearings, supra* note 9, at 92.

Moreover, there are several references in the hearings on the proposed amendments that suggest that the House Subcommittee on Criminal Justice considered "government personnel" to be synonymous with "employee of the government." *E.g., id.* at 86 (testimony of Prof. LaFave) ("The purpose of this added sentence is to make it clear that rule 6[e] does not forbid U.S. attorneys from making use of this expertise from other Government employees when that outside expertise is, in fact, necessary for the U.S. attorney to carry out his duties."); *id.* at 158 (testimony of Mr. Nussbaum) (equating the scope of the proposed amendment to "the entire Federal bureaucracy"); H.R.Rep. No. 95–195, at 13 (views of Rep. Wiggins) ("other government employees"); [13] *see also Hearings, supra* note 9, at 29, 35, 42, 51 (testimony and prepared statement of Judge Becker) (finding significant whether experts were actually on the payroll of the Department of Justice); S.Rep. No. 95–354, at 6, *re-*

---

**13.** Indeed, Representative Wiggins suggested an amendment that would limit the term "other government personnel" to apply to only "employees of the Department of Justice, or employees of other governmental agencies who, by law, investigate violations of the Federal criminal law." H.R.Rep. No. 95–195, at 15.

*printed in* 1977 U.S.C.C.A.N. at 530 ("other government employees").[14]

Second, the history supports the conclusion that Congress's concern about the scope of the *use* of grand jury disclosures was distinct from its concern about the *entity* to whom those disclosures were made. The Supreme Court's proposed amendment placed no restriction on the use of the materials by other government personnel. For this reason, among others, the House Subcommittee on Criminal Justice rejected the Supreme Court's proposed amendment. It was only the Senate's proposed amendment that contained the explicit use limitation that was ultimately approved. Comparison of these two versions reveals that Congress's concern regarding the use of the information was distinct from its understanding of the scope of the term "government personnel"—the use limitation was added to the already existent limitation providing that disclosures could only be made to govern-

ment personnel. Moreover, the participants in the hearings explicitly distinguished the concern about the entity to whom disclosures would be made from the use of such disclosures. *E.g., Hearings, supra* note 9, at 87 (remarks of Rep. Hyde) ("[W]ould it harm the verbiage of the rule to specify that there is a limit on the use of the information divulged by these other governmental personnel?").[15]

Third, every example used in the hearings on the proposed amendment made reference to a government agency or department—none referred to private outside experts. For example, in his explanation to the House Subcommittee on Criminal Justice, Professor LaFave stated that the amendment "is intended to make it clear that Rule 6(e) does not forbid U.S. attorneys to make use of other government personnel, such as employees of administrative agencies and government departments, when such outside expertise is necessary." *Id.* at 105 (prepared statement

---

**14.** Moreover, in considering the breadth of "government personnel," one member of the House Subcommittee on Criminal Justice inquired into whether state personnel were included within the scope of "government personnel":

> *Mr. Hall.* Can you envision any circumstances where anyone other than Federal Government agencies should be allowed to have this testimony, such as a State agency, a State government investigative agency ...?
>
> . . . .
>
> *Judge Becker.* . . . . I think while the Federal grand jury investigation is ongoing, the circumstances when that might occur would be exceedingly rare.

*Hearings, supra* note 9, at 42. No mention of disclosure to private individuals was suggested as being included within the scope of "government personnel."

**15.** Other less explicit references to the distinction between the entity to whom disclosures are made and for what use they are put are replete throughout the hearings. *E.g., Hearings, supra* note 9, at 26 (testimony of Terry

Philip Segal, attorney, Boston) (stating that the amendment should make clear that the use of materials is limited to use for the grand jury investigation); *id.* at 31, 34, 37 (testimony of Judge Becker) (wanting additional restrictions to be placed on the use of the materials); *id.* at 91 (testimony of Prof. LaFave) (interpreting the proposed amendment as placing a use restriction on the materials); *id.* at 111, 113, 124 (testimony and prepared statement of David Epstein, Criminal Justice Section, Am. Bar Ass'n) (requesting an explicit legislative statement limiting the use of the disclosed information); *id.* at 162 (prepared statement of Mr. Nussbaum) (suggesting that the focus should be on monitoring the assistance itself); *id.* at 194 (testimony of Prof. Leon Friedman, on behalf of the Am. Civil Liberties Union) (wanting additional restrictions on the use of the disclosed information); *id.* at 229–30 (prepared statement of Prof. Melvin B. Lewis, The John Marshall Law Sch.) (same); *see also Communication from the Chief Justice, supra,* at 9 (noting the separate requirement that the use of disclosure be limited); S.Rep. No. 95–354, at 8, *reprinted in* 1977 U.S.C.C.A.N. at 531 (same).

of Prof. LaFave); *see also id.* at 51 (prepared statement of Judge Becker) ("The classical case for the application for 6[e] orders is where the technical assistance sought is that of the I.R.S. or S.E.C., or of some other agency which has a continuing regulatory or oversight responsibility with respect to the activities of an individual or corporation.").[16]

Fourth, examination of the case law upon which the amendment was based supports limiting (A)(ii) disclosures to public individuals. The Advisory Committee, *Communication from the Chief Justice, supra,* at 9, its reporter at the hearings, Professor LaFave, *Hearings, supra* note 9, at 106, and the Senate Report, S.Rep. No. 95–354, at 6–7 & n.9, *reprinted in* 1977 U.S.C.C.A.N. at 530–31, all described the proposed amendments as a codification of existing case law. All of the case law relied upon involved disclosure to a government agency and not a private individual.[17] Moreover, the Senate Report understood the case law as allowing disclosure to government agencies. S.Rep. No. 95–354, at 6–7, *reprinted in* 1977 U.S.C.C.A.N. at

529–30. It is reasonable to infer from this that use of "government personnel" in the proposed amendment was designed to mirror this limitation in the case law.

Only two critics explicitly attacked the breadth of "other government personnel" in the proposed amendments. One opponent stated: "We are told that the 'government personnel' contemplated by the phrase 'includes, but is not limited to, [all] employees of administrative agencies and government departments.' No one is left out." *Hearings, supra* note 9, at 161 (prepared statement of Mr. Nussbaum) (footnote omitted) (quoting *Communication from the Chief Justice, supra,* at 8). But even he seemed to understand the term to be limited to employees of the government when he elaborated on his statement during his testimony: "Who are the 'other Government personnel'? The advisory committee tells us that they include, but are not limited to, all employees of administrative agencies and Government departments. No one is left out, not even Members of Congress or the military." *Id.* at 149. Thus, even this critic of the proposed

---

**16.** The hearings are replete with examples that refer solely to government agency or departmental personnel. *E.g., Hearings, supra* note 9, at 21 (testimony of Mr. Segal) (IRS); *id.* at 21 (remarks of Rep. Hyde) (EPA); *id.* at 29–30, 35–37, 47, 51 (testimony and prepared statement of Judge Becker) (IRS, Postal Service, SEC, Labor, FBI, Treasury, Secret Service); *id.* at 56, 70 (testimony and prepared statement of Richard L. Thornburgh, Acting Deputy Attorney General) (IRS, FBI); *id.* at 86, 105 (testimony and prepared statement of Prof. LaFave) (FBI, SEC, IRS, Postal Service, Secret Service); *id.* at 171 (testimony of Phylis Skloot Bamberger, Esq., on behalf of the Legal Aid Soc'y of N.Y. City) (proposed amendment applied to government agencies); *id.* at 194, 204 (testimony and prepared statement of Prof. Friedman) (IRS, SEC, FBI, FTC); *id.* at 229 (prepared statement of Prof. Lewis) ("from the IRS to the OEO"); *see also* H.R.Rep. No. 95–195, at 13 (views of Rep. Wiggins) (FBI, IRS, Treasury);

S.Rep. No. 95–354, at 6, *reprinted in* 1977 U.S.C.C.A.N. at 530 (FBI, IRS, Treasury).

**17.** *E.g., United States v. Evans,* 526 F.2d 701, 707 (5th Cir.1976) (Treasury Department); *United States v. Hoffa,* 349 F.2d 20, 43 (6th Cir.1965) (FBI), *aff'd on other grounds,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *In re April 1956 Term Grand Jury,* 239 F.2d 263, 272–73 (7th Cir.1956) (Treasury Department); *United States v. U.S. Dist. Court,* 238 F.2d 713, 721 (4th Cir.1956) (DOJ superiors); *Robert Hawthorne, Inc. v. Dir. of Internal Revenue,* 406 F.Supp. 1098, 1120–28 (E.D.Pa.1975) (Becker, J.) (IRS); *In re William H. Pflaumer & Sons, Inc.,* 53 F.R.D. 464 (E.D.Pa.1971) (Becker, J.) (IRS); *United States v. Anzelmo,* 319 F.Supp. 1106, 1116 (E.D.La.1970) (SEC); *United States v. Culver,* 224 F.Supp. 419, 432, (D.Md.1963) (Postal Service); *In re Kelly,* 19 F.R.D. 269, 270 (S.D.N.Y.1956) (FBI and IRS).

amendment's breadth understood it as applying to only those individuals under the employ of the government.

Only one critic directly attacked the language of the proposed amendment as giving rise to the risk that private individuals would obtain access to grand jury proceedings. She stated that:

> The scope of the term "Government personnel" remains undefined. The Advisory Committee notes seem to include investigative personnel from the Government agencies. However, these agencies are often involved in investigations and proceedings of their own and may use the testimony and exhibits before the grand jury for their own purposes, including harassment of a particular industry or individual coming within the agency's jurisdiction.
>
> Further, it is not clear whether Government personnel would open the door to permitting private contractors to be retained by the Government attorneys for purposes of analyzing the evidence or data, and does not make certain what circumstances make it "necessary."

*Id.* at 181 (prepared statement of Phylis Skloot Bamberger, Esq., on behalf of the Legal Aid Soc'y of N.Y. City).

The Government, at the hearing on its present motion, pointed to Ms. Bamberger's comment as supporting its interpretation. The Government's reliance on this comment is a bit puzzling, however. Although Ms. Bamberger's comment supports the Government's position that one *could* read "government personnel" as including private individuals, her comment in no way supports the conclusion that anyone in the House Subcommittee on Criminal Justice intended this result. Indeed, her fear supports the conclusion that the House Subcommittee understood the negative ramifications of making grand jury disclosures to private individuals.

### (3) The 1985 Amendment

The 1985 amendment to (A)(ii) also supports the conclusion that it was not designed to permit disclosure to private individuals. In 1985, Congress amended (A)(ii) by indicating that "government personnel" includes "personnel of a state or subdivision of a state." In amending the rule, the Advisory Committee wrote:

> Rule 6(e)(3)(A)(ii) currently provides that an attorney for the government may disclose grand jury information, without prior judicial approval, to other government personnel whose assistance the attorney for the government deems necessary in conducting the grand jury investigation. Courts have differed over whether employees of state and local governments are "government personnel" within the meaning of the rule. *Compare In re Miami Federal Grand Jury No. 79–8*, 478 F.Supp. 490 (S.D.Fla.1979), *and In re Grand Jury Proceedings*, 445 F.Supp. 349 (D.R.I. 1978) (state and local personnel not included); *with In re 1979 Grand Jury Proceedings*, 479 F.Supp. 93 (E.D.N.Y. 1979) (state and local personnel included). The amendment clarifies the rule to include state and local personnel.
>
> It is clearly desirable that federal and state authorities cooperate ... in organized crime ... investigations .... Because of such cooperation, government attorneys in complex grand jury investigations frequently find it necessary to enlist the help of a team of government agents. While the agents are usually federal personnel, it is not uncommon in certain types of investigations that federal prosecutors wish to obtain the assistance of state law enforcement personnel, which could be uniquely beneficial. The amendment permits disclosure to

those personnel in the circumstances stated.

It must be emphasized that the disclosure permitted is limited. The disclosure under this subdivision is permissible only in connection with the attorney for the government's "duty to enforce federal criminal law" and only to those personnel "deemed necessary ... to assist" in the performance of that duty. Fed.R.Crim.P. 6(e)(3)(A)(ii) advisory committee's note (1985 amendments) (last alteration in original). The amendment and its accompanying history is inconsistent with the Government's interpretation of (A)(ii).

First, under the Government's interpretation, the 1985 amendment is superfluous. Under the Government's interpretation, "government personnel" includes everyone as long as the use of the disclosed information is limited. If in fact Congress understood (A)(ii) as allowing disclosure to even *private* individuals as long as the *use* of the materials was limited, however, Congress's 1985 amendment to (A)(ii) would have been unnecessary.

Second, even if the Government were to argue that the 1985 amendment, albeit unnecessary, was meant to clarify or emphasize that disclosure to state personnel under (A)(ii) is appropriate, the particular language that Congress chose is inconsistent with the Government's interpretation. The Advisory Committee stressed that the amendment encompassed state *employees* in addition to federal *employees:* "Courts have differed over whether *employees* of state and local governments are 'government personnel' within the meaning of the rule. The amendment clarifies the rule to include state and local personnel." *Id.* (citations omitted) (emphasis added). If the Advisory Committee intended "government personnel" to include anyone (including private individuals) as long as her use

of the disclosed materials was limited, it would not have emphasized that "government personnel" included *employees* of state and local governments.

Moreover, the Advisory Committee again revealed its bifurcated concerns regarding not only the *use* of the disclosed information, but also the *entity* to whom the information is disclosed when it independently emphasized the need to restrict the *use* of the disclosed materials to federal criminal investigations in proposing the 1985 amendment: "It must be emphasized that the disclosure permitted is limited. The disclosure under this subdivision is permissible only in connection with the attorney for the government's 'duty to enforce federal criminal law' and only to those personnel 'deemed necessary ... to assist' in the performance of that duty." *Id.* (alteration in original).

Third, the accompanying amendment to Rule 6(e)(3)(B) would make no sense under the Government's interpretation. In the same set of amendments in which Congress added the language "including personnel of a state or subdivision of a state" to (A)(ii), Congress also amended Rule 6(e)(3)(B) to require an attorney for the government to certify that she has advised each person to whom (A)(ii) disclosure is made of his obligation of secrecy:

Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made *and shall certify that he has advised*

*such persons of their obligation of secrecy under this rule.*

*Communication from the Chief Justice of the United States Transmitting Amendments to the Federal Rules of Criminal Procedure* 12–13 (1985). In explaining this accompanying amendment, the Advisory Committee stated that "[e]specially with the amendment of subdivision (e)(3)(A)(ii) to include personnel of a state or subdivision of a state, who otherwise would likely be unaware of this obligation of secrecy, the giving of such advice is an important step in ensuring against inadvertent breach of grand jury secrecy." *Id.* at 15. Yet it would seem that state personnel would be more aware of the need for grand jury secrecy than a private individual. Thus, the Advisory Committee's focused concern regarding state personnel would be misplaced if, in fact, (A)(ii) already included disclosure to private individuals.

The foregoing reveals that the histories of both the 1977 and 1985 amendments to Rule 6(e), as well as the text of the current version, support limiting disclosure under (A)(ii) to employees of the government. Nonetheless, in a final effort to support its interpretation, the Government attempts to rely on the limited case law on (A)(ii) disclosure. The cases to which the Government points, however, fall short of convincing this Court.

**5. The Case Law**

The case law interpreting "government personnel" supports excluding disclosure to private individuals regardless of whether the private individual's use of the grand jury information is limited to assisting in the criminal investigation. In *United States v. Tager*, 638 F.2d 167 (10th Cir. 1980), the Tenth Circuit interpreted (A)(ii) in a case almost factually equivalent to the case at hand. In *Tager*, the Tenth Circuit considered the propriety of grand jury disclosures, pursuant to Rule 6(e)(3)(C)(i), to an investigator under the employ of the Insurance Crime Prevention Institute, which is an organization funded by insurance companies to aid in the investigation of possible frauds against insurance companies. *Id.* at 168. Preliminary to the court's determination of the applicability of Rule 6(e)(3)(C)(i), the court explained that disclosure was inappropriate under (A)(ii). *Id.* at 169. The Tenth Circuit reasoned that because the investigator was a private individual not under the employ of the government, he was not "government personnel" as that term is used in (A)(ii). *Id.*[18] In so holding, *Tager* concluded that (A)(ii)'s exception for "government personnel" only permitted the disclosure of grand jury materials to investigators employed by public entities—not to private investigators.[19]

---

**18.** The court went on to conclude that Rule 6(e)(3)(C)(i) was also inapplicable because that rule did not allow disclosures to be made during an ongoing grand jury proceeding. *Tager*, 638 F.2d at 170. The Government has not asked this Court to consider whether disclosure to Bureau investigators would be appropriate under Rule 6(e)(3)(C)(i).

**19.** The Government, relying on *United States v. Anderson*, 778 F.2d 602 (10th Cir.1985), *United States v. Benjamin*, 852 F.2d 413 (9th Cir.1988), *vacated*, 490 U.S. 1043, 109 S.Ct. 1948, 104 L.Ed.2d 418, *remanded to* 879 F.2d

676 (9th Cir.1989) (vacating earlier opinion and dismissing for want of jurisdiction), and *United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir.1987), *aff'd on other grounds sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), argues that *Tager* is no longer good law. None of these cases, however, questions *Tager*'s holding as to the inapplicability of (A)(ii) to private individuals.

In *Anderson*, the Tenth Circuit did not overrule *Tager*'s holding that "government personnel" excludes private investigators. The Tenth Circuit in *Anderson* explicitly dis-

Other district courts have also held that (A)(ii) does not permit disclosure to private individuals. *E.g., Pimental,* 199 F.R.D. at 37 (holding that [A][ii] does not permit

tinguished its facts from *Tager's,* indicating that "[i]n *Tager* the disclosure involved grand jury transcripts, not preexisting promotional materials. The person to whom disclosure was made was a nontestifying investigator and was not in any sense in the employ of the government, and the prosecution, not the grand jury, made the request for disclosure." *Anderson,* 778 F.2d at 605 n. 1. After distinguishing *Tager,* without relying on any particular provision of Rule 6(e)(3), *Anderson* concluded that the disclosure before it was proper. *Anderson* specifically distinguished *Tager* on the ground that, in *Anderson,* the expert *was* employed by the government. Thus, *Anderson* cannot be read as questioning *Tager's* holding that "government personnel" only applies to individuals under the employ of the government.

The Government also relies on the Ninth Circuit's interpretation of *Anderson* as discrediting *Tager.* In *Benjamin,* the Ninth Circuit stated that "*Anderson* narrows and discredits *Tager* to the point that it is doubtful authority even in its own circuit." *Benjamin,* 852 F.2d at 419. The Ninth Circuit's characterization of *Anderson* is not compelling. As already stated, *Anderson* did not question *Tager's* holding that "government personnel" excludes individuals not in the employ of the government. In fact, *Benjamin* supports this Court's reading of *Anderson. Benjamin* disagreed with *Tager's* holding that Rule 6(e)(3)(C)(i) does not permit grand jury disclosures to private investigators, and not *Tager's* holding that (A)(ii) applies only to public individuals:

> We hesitate to adopt *Tager's* reasoning that subsection (e)(3)(A)(ii) *precludes* resort to private investigative help. Instead, we read subsection (e)(3)(C)(i) as giving discretion to the district court to order the disclosure of grand jury materials to private parties aiding the government's investigation.

*Id. Benjamin* did not hold that disclosure to a private investigator was proper under (A)(ii). Rather, implicit in its reasoning is that the Ninth Circuit agreed with *Tager* that (A)(ii) was inapplicable, but disagreed with *Tager's* further conclusion that the inapplicability of (A)(ii) necessarily made Rule 6(e)(3)(C)(i) inapplicable as well. Thus, *Benjamin* does not

disclosure to Bureau investigators); *In re November 1992 Special Grand Jury,* 836 F.Supp. 615 (N.D.Ind.1993) (holding that neither [A][ii] nor Rule 6[e][3][C][i] allows

conflict with the holding of *Tager* that this Court adopts.

The Government's reliance on *Kilpatrick* as undermining *Tager* is also misplaced. *Kilpatrick* involved disclosure to IRS civil agents. *Kilpatrick,* 821 F.2d at 1471. The Government relies on the statement in *Kilpatrick* that "[t]he Rule 6(e) proscription is on the use of the grand jury material and not on who obtains it." *Id.* In context, however, *Kilpatrick's* statement does not support the Government's position. This statement was made regarding Internal Revenue Service agents, who are indisputably under the employ of the government. When *Kilpatrick* indicated that the *use* of grand jury materials is key, it was referring to use in civil, as opposed to criminal, cases. Similarly, when *Kilpatrick* indicated that who obtains the material is unimportant, it was referring only to a class of people under the employ of the government, some in civil departments and some in criminal departments. Thus, *Kilpatrick* merely held that the distinction between civil and criminal personnel under the employ of the government is insignificant, and not that the distinction between individuals who are or are not under the employ of the government is immaterial.

Again, the Government improperly conflates the two issues of (1) use and (2) the entity to whom disclosures are made. The concern that grand jury disclosures for the purpose of civil investigations should be given a higher degree of scrutiny than disclosures used to further a criminal investigation simply does not imply that the use of materials is *all* that matters. The courts have only expressed their concern about the use of grand jury information in instances in which disclosure is made to individuals in the employ of the government. The Government points to no cases in which a court allowed disclosure to a private individual under (A)(ii) because the use of the materials was limited. Thus, the case law does not imply that limiting the use of grand jury materials by private individuals would be sufficient to bring such disclosure within the scope of (A)(ii).

For further reasons supporting reliance on *Tager,* see *Pimental,* 199 F.R.D. at 36 & nn.13–14.

disclosure to private auditors); *In re Disclosure of Grand Jury Material,* 645 F.Supp. 76, 79 (N.D.W.Va.1986) (same); *see also United States v. Rosenfield,* 780 F.2d 10, 11 (3d Cir.1985) (noting that the Government conceded that [A][ii] did not permit disclosure to an insurance investigator employed by an entity similar to the Bureau). Of particular note, in *In re November 1992 Special Grand Jury,* 836 F.Supp. at 616–17, the court held that (A)(ii) does not permit disclosure to a private individual even "for the sole and limited purpose of aiding and assisting the grand jury in the instant investigation," *id.,* the same limitation on the use of the grand jury information upon which the Government relies in this case.

To support its contrary interpretation, the Government points to *United States v. McRae,* 580 F.Supp. 1560 (D.D.C.1984), and *United States v. Lartey,* 716 F.2d 955 (2d Cir.1983). These cases are not persuasive. *See Pimental,* 199 F.R.D. at 37; *see also Pimental,* 201 F.R.D. 24, 25 (denying motion for reconsideration).

First, in *McRae,* the court considered whether a Washington, D.C. Metropolitan Police officer qualified as "government personnel" under (A)(ii). *McRae,* 580 F.Supp. at 1562–63. Because *McRae* predated the 1985 amendment to (A)(ii), which redefined "government personnel" to include state and local personnel, the inquiry of the court focused on whether the officer qualified as government personnel in light of the fact that he was an employee of a municipality. *Id.* The court concluded that, as a member of the D.C. Police Department, the officer was actually a representative of both the federal and District of Columbia systems, bringing him under the scope of (A)(ii) regardless of whether it included state and local personnel. *Id.*

Although dicta in *McRae* can be read as supporting the Government's interpretation, *e.g., id.* at 1563 ("[W]hen assisting investigations yielding federal criminal charges, [D.C. Police] can best be analogized not to state officials, whose ultimate responsibility is not to the United States Attorney, but rather to outside experts— such as handwriting experts, accountants, etc.—who are brought in for specific investigations and for such purposes are responsible to and under the control of federal officials."), it must be read in light of the fact that the court conceived of the D.C. Officer as being, in essence, a federal employee, *id.* Thus, *McRae* does not support the inference that grand jury disclosure to private individuals is warranted.

Second, in *Lartey,* disclosure was made to Eugene Moran, a recently retired Internal Revenue Service agent, who assisted the Government in its investigation. *Lartey,* 716 F.2d at 960. The court pointed out that Moran worked exclusively for the Government during the investigation and was able to provide the Government with expertise not possessed by permanent government employees. *Id.* at 964. The court concluded that disclosure was appropriate under (A)(ii) because "[t]here is nothing in the legislative history of the 1977 amendments to Rule 6(e) ... to indicate that the term is limited to permanent civil service employees of the United States." *Id.*

Although *Lartey,* on its face, appears to support the Government's interpretation because the court ultimately held that disclosure to a private specialist under (A)(ii) was appropriate, its holding does not wholly support the Government's interpretation. *Lartey* did read (A)(ii) expansively as not requiring a *permanent* employment relationship, but it did not entirely read out the requirement that some employment relationship exist. The Court sees as significant that *Lartey* limited its holding to allowing disclosure under (A)(ii) to

*nonpermanent* government employees rather than reducing "government personnel" to stating a restriction only on the use of the information. Indeed, without this qualified holding, *Lartey* could not accurately have stated that its holding was consistent with the legislative history of (A)(ii). Thus, *Lartey* does not support disclosure in this case because there is no suggestion on the part of the Government that the Bureau investigators are in any way in the employ of the government.

In light of the text and history of (A)(ii) as well as the applicable case law, this Court concludes that "government personnel" means employees of the government. Accordingly, this Court rejects the Government's interpretation of (A)(ii). Although the Government's interpretation may be reasonable, it is for Congress and not this Court to expand the scope of (A)(ii).

### D. *Disclosure to Bureau Investigators Under (A)(ii)*

 The Government only seeks disclosure pursuant to (A)(ii). The Government does not here argue that the Bureau is a public entity. Thus, as previously stated, this Court assumes without deciding that the Bureau is a private entity. It follows that the Bureau's investigators are not employees of the state. Therefore, disclosure pursuant to (A)(ii) is improper under this Court's interpretation of "government personnel."

The Government does not seek disclosure pursuant to Rule 6(e)(3)(C)(i), which provides that "[d]isclosure otherwise prohibited by this rule ... may also be made ... when so directed by a court preliminarily to or in connection with a judicial proceedings." Fed.R.Crim.P. 6(e)(3)(C)(i). This Court's opinion, therefore, does not speak to whether disclosure in the present case would be appropriate under Rule

6(e)(3)(C)(i). *Compare United States v. Mayes*, 670 F.2d 126, 129 (9th Cir.1982), *and United States v. Stanford*, 589 F.2d 285, 292 (7th Cir.1978), *with Tager*, 638 F.2d at 171.

### III. Conclusion

Accordingly, the United States's Motion for Reconsideration [Docket No. 3] is DENIED.